UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ken Davis,

       Plaintiff,

v.                                           Civ. No. 08-1408 (JNE/JJG)
                                           ORDER

Larson Moving & Storage Co.,
d/b/a Mohawk Moving & Storage Co.,

       Defendant.

---

James C. Hardman, Esq., Law Offices of James C. Hardman, and Paul O. Taylor, Taylor & Associates, Ltd., appeared on behalf of Plaintiff Ken Davis.

Andre T. Hanson, Esq., and Patrick R. Martin, Esq., Fulbright & Jaworski LLP, appeared on behalf of Defendant Larson Moving & Storage Co., d/b/a Mohawk Moving & Storage Co.

---

Plaintiff Ken Davis brings this action against Defendant Larson Moving & Storage Co., d/b/a Mohawk Moving & Storage Co., for breach of contract and for violations of the Truth-in-Leasing regulations. *See* 49 U.S.C. § 14704(a)(2) (2000); 49 C.F.R. § 376.12 (2007). The case is before the Court on Defendant's Motion to Dismiss Amended Complaint or in the Alternative to Stay and Refer to Arbitration. For the reasons set forth below, the Court grants the motion in part and denies the motion in part.

## I.   BACKGROUND

Plaintiff is the owner and operator of one or more semi-trailer tractor trucks. Defendant, a moving company, is in the business or transporting and storing household goods and commodities.

On May 19, 1998, Plaintiff and Defendant entered into an independent contractor's lease agreement (1998 ICLA). The 1998 ICLA provided, among other things, that Plaintiff would

lease a truck to Defendant and transport cargo belonging to Defendant's customers.  On

September 28, 2004, the parties entered into an independent contract operating agreement (2004

ICOA), which superseded the 1998 ICLA and similarly provided that Plaintiff would lease

equipment to Defendant and transport cargo belonging to Defendant's customers.  According to

the Amended Complaint, the leases between Plaintiff and Defendant are subject to the Truth-in-

Leasing regulations.

On October 16, 2006, Plaintiff served the Complaint, alleging breach of the 1998 ICLA,

on Defendant, and the Complaint was subsequently filed in Anoka County District Court.[1]  On

May 21, 2008, Plaintiff filed the Amended Complaint.  The Amended Complaint contains two

counts.  One count alleges that Defendant breached the 1998 ICLA and the 2004 ICOA.  The

other count is a claim under 49 U.S.C. § 14704(a)(2) for damages arising from Defendant's

alleged failure to comply with the Truth-in-Leasing regulations.  Defendant removed the case to

federal court and filed the present motion, requesting dismissal or, in the alternative, a stay and

referral to arbitration.

## II.  DISCUSSION

Defendant makes three arguments in support of its motion.  First, Defendant asserts that

Plaintiff's claims related to the 1998 ICLA are barred by a two-year statute of limitations.

Second, Defendant argues that Plaintiff is contractually obligated to arbitrate his claims related to

the 2004 ICOA.  Third, Defendant argues that Plaintiff fails to state a claim for breach of

contract.

---

[1]      In Minnesota, a civil action is commenced by service on the defendant.  *See* Minn. R.
Civ. P. 3.01, 3.02.

**A.      Statute of limitations on actions pursuant to 49 U.S.C. § 14704(a)(2)**

The Federal Highway Administration's Truth-in-Leasing regulations mandate that leases between motor carriers like Defendant and truck owner-operators like Plaintiff contain certain provisions.  *See* 49 C.F.R. § 376.12.  The Truth-in-Leasing regulations further require that motor carriers comply with those mandatory provisions.  *See id.*  Section 14704(a)(2) creates a right of action to recover "damages" for violation of the Truth-in-Leasing regulations.  *See Owner-Operator Indep. Drivers Ass'n v. New Prime, Inc.*, 192 F.3d 778, 785 (8th Cir. 1999).

Defendant argues that Plaintiff's claim under 49 U.S.C. § 14704(a)(2) for violation of the Truth-in-Leasing regulations with respect to the 1998 ICLA must be dismissed because it is time-barred.  Specifically, Defendant argues that this action was commenced more than two years after termination of the 1998 ICLA, and that the two-year limitations period in 49 U.S.C. § 14705(c) (2000) applies because section 14705(c) contains a scrivener's error and mistakenly references section 14704(b) instead of section 14704(a)(2).  Plaintiff contends that no limitations period is specified for section 14704(a)(2) and that therefore the four-year catch-all limitations period of 28 U.S.C. § 1658 (Supp. V 2005) applies.

The Court's "objective in interpreting a federal statute is to give effect to the intent of Congress."  *United States v. McAllister*, 225 F.3d 982, 986 (8th Cir. 2000) (quotation marks omitted).  "If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary.  Therefore, if the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end."  *Id.* (quotation marks omitted).  A court should not "rewrite a statute because of an alleged scrivener error unless a literal interpretation would lead to an absurd result."  *Owner-Operator Indep. Drivers Ass'n v. Landstar Sys., Inc.*, 541 F.3d 1278, 1297 (11th Cir. 2008); *see United States v. Ron Pair Enters.,*

*Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." (quotation marks omitted)).  *But see Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent.  'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'" (citation omitted)).

Section 14705(c), the statute that allegedly contains a scrivener's error, states that an action "to recover damages under section 14704(b) [must be filed] within 2 years after the claim accrues."  Although section 14705(c) does not mention section 14704(a)(2), some district courts have read section 14705(c) to apply its two-year limitations period to section 14704(a)(2) rather than to section 14704(b).  *See Owner-Operator Indep. Drivers Ass'n v. United Van Lines, LLC*, 503 F. Supp. 2d 1200, 1204 (E.D. Mo. 2007) (noting (1) that section 14705(c) references "damages" but cites 14704(b), which relates to overcharges, and (2) that section 14705 states two conflicting limitations periods for actions for overcharges but gives no limitations period for actions for damages), *appeal docketed*, No. 07-3829 (8th Cir. Dec. 14, 2007); *Fitzpatrick v. Morgan S., Inc.*, 261 F. Supp. 2d 978, 983, 986 (W.D. Tenn. 2003) (discussing drafting history of sections 14704 and 14705; the Surface Transportation Board's determination that a scrivener's error existed; legislative intent to "preserve the relevant statute of limitations, which was two years under the former Interstate Commerce Act;" and legislative intent to make the limitations period, which had previously been two years for rail and pipeline carriers, "uniform for all types of carriers").

However, the Eleventh Circuit Court of Appeals, in the only appellate opinion to have addressed this issue, concluded that "[t]here is no absurd result imposing different statute of limitations for two different types of claims arising out of § 14704." *Landstar Sys., Inc.*, 541 F.3d at 1297; *cf. Owner-Operator Indep. Drivers Ass'n v. C.R. England*, 325 F. Supp. 2d 1252, 1265 (D. Utah 2004) ("The Court finds that the imposition of the two-year statute of limitations for one category of claims while retaining the general four-year federal statutes of limitations for the type of claims at issue in this case was a reasoned choice by Congress and the Court will not attempt to rewrite the statute."). As a result, the court in *Landstar* declined to correct any alleged scrivener's error and held that the four-year catch-all statute of limitations applied. 541 F.3d at 1297; *cf. United Van Lines*, 503 F. Supp. 2d at 1204 (noting that a majority of district courts addressing the issue applied the four-year limitations period). By its plain terms, section 14705(c) does not apply to actions under section 14704(a)(2), and the Court agrees that literal application of section 14705(c) does not produce absurd results. Accordingly, the four-year limitations period of 28 U.S.C. § 1658 applies, and Plaintiff's section 14704(a)(2) claims regarding the 1998 ICLA are timely.

**B.     Arbitration**

Defendant argues that Plaintiff's claims related to the 2004 ICOA are subject to that document's mandatory arbitration provisions. Plaintiff argues that the arbitration provision in the 2004 ICOA does not apply to his claims against Defendant, that claims for violation of the Truth-in-Leasing regulations may not be contractually committed to arbitration, that his claims are exempt from compulsory arbitration pursuant to section 1 of the Federal Arbitration Act (FAA), and that Defendant waived its arbitration rights.

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4 (2006). The FAA establishes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As a result, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (quotation marks omitted).

In relevant part, the 2004 ICOA states:

> 24(a). <u>Arbitration Required for All Disputes</u>. Any dispute (including a request for preliminary relief) arising in connection with or relating to this Agreement, its terms, or its implementation, including any allegation of tort or of breach of this Agreement or of violations of the requirements of any applicable government authorities, whether local, state, federal, or foreign, including but not limited to the federal leasing regulations (49 C.F.R. Part 376), shall be fully and finally resolved by arbitration in accordance with (1) the Commercial Arbitration Rules (and related arbitration rules for preliminary relief) of the American Arbitration Association ("AAA"); (2) the Federal Arbitration Act (ch. 1 of tit. 9 of United States Code, with respect to which the parties agree that this Agreement is not an exempt "contract of employment") or, if the Federal Arbitration Act is held not to apply, the arbitration laws of the State of Missouri; and (3) the procedures set forth below.

Accordingly, by its plain terms, the arbitration clause in the 2004 ICOA applies to Plaintiff's contractual and regulatory claims related to that document.

Plaintiff has not identified authority establishing that, as a general matter, resolution of regulatory or statutory claims may not be committed to arbitration. *Cf. Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("[S]tatutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."). Agreements to arbitrate

statutory claims may be voided if the party seeking to avoid arbitration establishes that arbitration is prohibitively expensive. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000). Plaintiff, however, has not established that arbitration would be prohibitively expensive. The Court notes, for example, that the 2004 ICOA states that, for owner-operators who lease only one truck to Defendant, arbitration expenses above the amount of the court filing fee in the United States District Court for the District of Minnesota will be borne by Defendant. Plaintiff appears to have leased a single truck to Defendant in the 2004 ICOA, and Plaintiff has not established otherwise.

Plaintiff has not established that claims under section 14704(a)(2) specifically may not be committed to arbitration. At oral argument, Plaintiff asserted that the regulatory scheme applicable to motor carriers such as Defendant evidences Congress's intent to preclude resolution of claims for violation of the Truth-in-Leasing regulations through arbitration. However, Plaintiff cited no authority establishing this contention. To the contrary, district courts have enforced agreements to arbitrate claims arising from violations of the Truth-in-Leasing regulations. *See Owner-Operator Indep. Drivers Ass'n v. United Van Lines, LLC*, No. 4:06CV219, 2006 WL 5003366, at *3, *5-6 (E.D. Mo. Nov. 15, 2006); *Owner-Operator Indep. Drivers Ass'n v. Swift Transp. Co.*, 288 F. Supp. 2d 1033, 1040 (D. Ariz. 2003). Even when courts have denied motions to compel arbitration of claims for violation of the Truth-in-Leasing regulations, they have not done so because enforcement of the Truth-in-Leasing regulations, independent of the effect of other legal authorities, is necessarily exempted from arbitration. *See C.R. England*, 325 F. Supp. 2d at 1258, 1262-64 (denying motion to compel arbitration of violations of the Truth-in-Leasing regulations because the arbitration agreement was

unconscionable; the plaintiffs could not effectively vindicate their federal statutory rights via arbitration of their claims; and the claims fell under a specific exemption in the FAA).

Plaintiff has not established that the 2004 ICOA is exempted from mandatory arbitration by section 1 of the FAA, which excludes from the FAA's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 (2006). Plaintiff asserts that contracts for the services of transportation workers, regardless of whether they specifically qualify as "employees," are excluded from application of the FAA by section 1. Plaintiff, however, does not identify authority that supports this interpretation. Plaintiff's suggested interpretation is contrary to the plain language of section 1, and the Court concludes that application of section 1 is limited to employment contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) ("Section 1 exempts from the FAA only contracts of employment of transportation workers."); *United Van Lines*, 2006 WL 5003366, at *2 ("Courts construe [section 1] narrowly, but the FAA does exclude contracts of employment for transportation workers." (citations omitted)); *C.R. England*, 325 F. Supp. 2d at 1258 ("[T]he Court considers the Operating Agreements to determine whether or not they are 'contracts of employment' of a class of workers engaged in interstate commerce within the meaning of the FAA [to determine whether section 1 of the FAA applies]."); *Swift Transp. Co.*, 288 F.Supp.2d at 1035 & n.3 (noting a lack of authority specifically on whether section 1 applies to transportation workers who are independent contractors and concluding that section 1 did not apply where plaintiffs did not appear to be employees either functionally or under the terms of their contracts); *Gagnon v. Serv. Trucking Inc.*, 266 F. Supp. 2d 1361, 1364 (M.D. Fla. 2003) ("Having determined that truck drivers fall within the class of transportation workers that are excluded under the FAA, the Court also must

determine whether the Lease Agreement in this case is a 'contract of employment' as used in the

FAA in order for the exemption to apply."), *vacated pursuant to settlement*, No. 5:02-CV-342-

OC-10GRJ, 2004 WL 290743, *1 (M.D. Fla. Feb. 3, 2004).

Plaintiff further argues that section 1 of the FAA applies because owner-operator truck

drivers such as Plaintiff are classified as employees by operation of law.  The Secretary of

Transportation has the authority to require that a regulated motor carrier

> that uses motor vehicles not owned by it to transport property under an
> arrangement with another party to . . . have control of and be responsible for
> operating those motor vehicles in compliance with requirements prescribed by the
> Secretary on safety of operations and equipment, and with other applicable law as
> if the motor vehicles were owned by the motor carrier.

49 U.S.C. § 14102(a) (2000).  The federal motor carrier leasing regulations state that

> [t]he lease shall provide that the authorized carrier lessee shall have exclusive
> possession, control, and use of the equipment for the duration of the lease. The
> lease shall further provide that the authorized carrier lessee shall assume
> complete responsibility for the operation of the equipment for the duration of the
> lease.

49 C.F.R. § 376.12(c)(1).  Plaintiff argues that, because regulated motor carriers like Defendant

necessarily have possession and control of the leased equipment and assume responsibility for its

the operation, leases like the 2004 ICOA necessarily create employment relationships.  *See*

*Gagnon*, 266 F. Supp. 2d at 1365 ("[T]he Defendant by operation of federal law[, that is, 49

U.S.C. § 14102(a) and 49 C.F.R. § 376.12(c)(1),] is deemed to have assumed the responsibility

and the duty to control the vehicle, a key ingredient in determining whether a relationship is

deemed to be employer-employee or is deemed to be an independent contractor relationship.").

Plaintiff's argument, however, cannot be reconciled with 49 C.F.R. § 376.12(c)(4), which states

> [n]othing in the provisions required by paragraph (c)(1) of this section is intended
> to affect whether the lessor or driver provided by the lessor is an independent
> contractor or an employee of the authorized carrier lessee.  An independent

>contractor relationship may exist when a carrier lessee complies with 49 U.S.C.
>14102 and attendant administrative requirements.

Accordingly, the Court concludes that compliance with 49 C.F.R. § 376.12(c)(1) does not

conclusively establish that the 2004 ICOA is a contract of employment.  *See United Van Lines*,

2006 WL 5003366, at *3 n.3 (concluding that the holding in *Gagnon* is erroneous because it

ignores section 376.12(c)(4)); *cf. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467

U.S. 837, 843-44 (1984) (indicating that, when Congress has delegated authority to an agency to

give effect to a statute by promulgating regulations, the resulting regulations should be deemed

valid "unless they are arbitrary, capricious, or manifestly contrary to the statute").

　　　In the alternative, Plaintiff argues that section 1 of the FAA applies because Plaintiff was

functionally an employee of Defendant.  The common law factors for determining whether an

individual has been hired as an employee include "the hiring party's right to control the manner

and means by which the product is accomplished," as well as

>the skill required; the source of the instrumentalities and tools; the location of the
>work; the duration of the relationship between the parties; whether the hiring
>party has the right to assign additional projects to the hired party; the extent of the
>hired party's discretion over when and how long to work; the method of payment;
>the hired party's role in hiring and paying assistants; whether the work is part of
>the regular business of the hiring party; whether the hiring party is in business;
>the provision of employee benefits; and the tax treatment of the hired party.

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-324 (1992) (quotation marks omitted);

*see Tretter v. Dart Transit Co.*, 135 N.W.2d 484, 486 (Minn. 1965) (indicating that factors

relevant to whether an employment relationship exists include "(1) [t]he right to control the

means and manner of performance; (2) the mode of payment; (3) the furnishing of material or

tools; (4) the control of the premises where the work is done; and (5) the right of the employer to

discharge").  Under the 2004 ICOA, Plaintiff was required to provide his own truck.  Plaintiff

assumed control over selection of routes and fuel stops, decisions about maintenance of his truck,

arrangements for loading an unloading his truck, and scheduling work hours and rest periods, subject to legal requirements and the needs of Defendant's customers.  Plaintiff was permitted to hire additional personnel to perform services under the lease, with Plaintiff assuming responsibility for hiring, supervision, and compensation of the additional personnel.  Plaintiff could elect to reject specific shipments and could choose to be unavailable to Defendant for reasonable periods of time.  Under these circumstances, the Court concludes that Plaintiff has not established that he was functionally an employee of Defendant.[2]

Finally, the Court concludes that Defendant has not waived its arbitration rights.  *See Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993) ("[W]e will find waiver where the party claiming the right to arbitrate: (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.").  Plaintiff did not assert his claims under the 2004 ICOA—the agreement containing the arbitration provision—until Plaintiff filed the Amended Complaint on May 21, 2008.  Defendant filed the present motion on June 25, 2008.  The Court concludes that Defendant's delay of approximately one month does not support a finding of waiver.  Moreover, even if Plaintiff could establish that Defendant was required to assert its arbitration rights at some earlier time, Plaintiff has not demonstrated prejudice by any delay.  *See Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 159 (8th Cir. 1991) ("Delay in seeking to compel arbitration does not itself constitute prejudice.").

---

[2]     The Court notes that the 2004 ICOA labels Plaintiff an "independent contractor," and the arbitration provision itself states that, with respect to the FAA, "the parties agree that this Agreement is not an exempt 'contract of employment.'"

In summary, Plaintiff's claims related to the 2004 ICOA are subject to the arbitration provision in that document.  Plaintiff's claims are not exempt from compulsory arbitration under section 1 of the FAA.  Defendant has not waived his arbitration rights.

**C.     Breach of Contract**

Defendant argues that Plaintiff's state law contract claim should be dismissed because, while the original Complaint stated claims for breach of the 1998 ICLA, the Amended Complaint omits all detailed breach of contract allegations and merely re-labels Plaintiff's section 14704(a)(2) claim in Count 1 as a claim for breach of contract in Count 2.  Defendant argues that, as a result, Plaintiff's contract claim in Count 2 is conclusory and does not state a claim upon which relief may be granted.[3]

When considering a motion to dismiss, a court construes the pleadings in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir. 1994).  "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."  *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (quotation marks omitted).  A complaint must, however, contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

Count 2 of the Amended Complaint, alleging breach of contract, states as follows:

---

[3]       As discussed above, Plaintiff's claims related the 2004 ICOA are committed to arbitration.  As a result, any defenses related to the merits of Plaintiff's claim for breach of the 2004 ICOA—including any argument that Plaintiff fails to state a claim for breach of the 2004 ICOA—should be addressed through the arbitration process. *See St. Paul Fire & Marine Ins. Co. v. Courtney Enters.*, 270 F.3d 621, 625 (8th Cir. 2001) ("[In deciding whether to compel arbitration], the court may not rule on the merits of any claim the parties have agreed to arbitrate.").

For Count Two of his Complaint, Plaintiff realleges those matters set forth in paragraphs one through thirty-eight above and further states:

39. Defendant has breached its lease with Plaintiff which incorporated the provisions specified in 49 C.F.R. § 376.12 as a matter of law.

40. As a result of the breach of the leases by Defendant, Plaintiff Kenneth Davis has incurred damages to be determined at trial, but which are in excess of $50,000.

Notably, Count 2 incorporates the allegations in Count 1, Plaintiff's section 14704(a)(2) claim breach of the Truth-in-Leasing regulations. Included in Count 1 are the following allegations:

23. Although [the 1998 ICLA] and [the 2004 ICOA] complied with 49 C.F.R. § 376.12(g) [(stating that leases must require authorized carriers to provide certain rate and pay documentation to lessors)], Defendant did not provide Plaintiff with copies of the rated freight bills, or a computer-generated document containing the same information contained on a rated freight bill, for that Plaintiff transported by Plaintiff at or before the time of settlement. In addition, Defendant did not permit Plaintiff to examine copies of documents from which rates were computed.

. . . .

27. Although [the 1998 ICLA] and [the 2004 ICOA] complied with 49 C.F.R. §376.12(i) [("The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement.")], Defendant required the Plaintiff to purchase uniforms from Defendant in violation of 49 C.F.R. § 376.12(i).

. . . .

36. In addition to its failure to adhere to the 49 C.F.R. § 376.12 with respect to the form of leases, Defendant violated the mandatory lease terms in the following respects:

A. It did not pay Plaintiff compensation due including, but not limited to, fuel surcharges for shipments transported by Plaintiff;
B. It did not pay Plaintiff all of the compensation due him within 15 days of submission of delivery documents and daily logs;
C. It did not provide Plaintiff with copies of its rated freight bills for shipments that he transported;

D. It did not allow Plaintiff to examine copies of documents from which it
computed rates;
E. It did not itemize, explain and document for loss and damage charges;
F. It did not reimburse Plaintiff for unused portions of base plates;
G. It withheld from Plaintiff fuel tax credits and other escrow funds[.]

Taken together, Count 1 and Count 2 allege not only a claim under section 14704(a)(2)

for violation of the Truth-in-Leasing regulations but also a claim for breach of the terms of the

1998 ICLA.  Accordingly, the Court concludes that Count 2 states a claim for breach of

contract.[4]

### III.      CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.      Defendant's Motion to Dismiss Amended Complaint or in the Alternative
Stay and Refer to Arbitration [Docket No. 6] is GRANTED in part and
DENIED in part.

2.      Plaintiff's claims related to the 2004 ICOA are referred to arbitration
pursuant to 9 U.S.C. § 4 and this action is stayed as to those claims
pending the outcome of the arbitration pursuant to 9 U.S.C. § 3 (2000).

3.      Either party may file a motion to stay litigation of Plaintiff's claims related
to the 1998 ICLA.  Until such a motion is granted, litigation on those
claims will proceed.

Dated:  October 27, 2008

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[4]      In Defendant's reply memorandum, Defendant specifically disclaims any argument that
Plaintiff's contract claims are preempted by federal statutes or regulations.  *Cf. Hall v. N. Am.
Van Lines, Inc.*, 476 F.3d 683, 687-88 (9th Cir. 2007) ("The Carmack Amendment is a federal
statute that provides the exclusive cause of action for interstate shipping contract claims, and it
completely preempts state law claims alleging delay, loss, failure to deliver and damage to
property."); 49 C.F.R. § 376.12 ("The required lease provisions shall be adhered to and
performed by the authorized carrier.").